# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | |
|---|---|
| KEVIN MILLER,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.:<br>)<br>)<br>)<br>)<br>) JURY DEMAND<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Kevin and Brittany Miller ("Plaintiffs") files this complaint against Defendant T-Mobile for violations of the Federal Communications Act, negligence, and wantonness. In support thereof, Plaintiff states as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Miller is an adult and resident of Madison County, Alabama.

2. Defendant T-Mobile, Inc. is a Delaware corporation with is principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

1255275.1

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 47 U.S.C. § 207 because Plaintiff alleges that he suffered damages due to Defendant's violation of Federal Communications Act. This Court has supplemental jurisdiction over Plaintiff's state law negligence and wantonness claims because Plaintiff's other claim is so related to the claim within the Court's original jurisdiction that they form part of the same case or controversy.

4. This Court has personal jurisdiction over the Defendant because it has purposely availed itself of the laws and benefits of this forum. Among other things, T-Mobile U.S.A. sells cellular service to numerous Alabama residents, including the Plaintiff, and this case arises out of T-Mobile's provision of cellular service to the Plaintiff.

5. Venue is proper in this Court under 28 U.S.C. 1391(b)(2). A substantial part of the events or omissions giving rise to this Complaint occurred in this district.

## FACTUAL ALLEGATIONS

6. Sometime in or around 2014, Plaintiffs obtained cellular telephone service from the Defendant.

7. On or about April 14, 2021, Plaintiff Kevin Miller received a text message from T-Mobile inquiring as to the quality of customer service he experienced on his call with T-Mobile's representatives that morning.

8. Plaintiff had not spoken with T-Mobile that day.

9. Concerned about the text message, Plaintiff called T-Mobile and spoke to one of its service representatives, Mary, about the text message.

10. Mary explained that T-Mobile's records reflected that the Plaintiff had called them that morning. After Plaintiff informed Mary that he had not called T-Mobile that day, Mary put Plaintiff on hold and listened to the recording of the earlier call.

11. When Mary came back on the line with Plaintiff, she told him that the earlier caller had pretended to be the Plaintiff and had asked for personal information about him, but had not been able to provide verification information regarding Plaintiff's identity. Mary also stated that, despite the prior caller's inability to verify his identity, T-Mobile's representative had divulged confidential personal and/or account information about the Plaintiff to the caller.

12. Mary then told Plaintiff that she would need to escalate the matter and that she would have a supervisor contact the Plaintiff.

13. Later that day, a T-Mobile supervisor contacted Plaintiff and Plaintiff confirmed that no one from his family had contacted T-Mobile about Plaintiff's account. The supervisor indicated that another supervisor would call him back.

14. Shortly thereafter, a second T-Mobile manager called the Plaintiff. She confirmed to Plaintiff that some of his confidential account information, including

his account number, had been given to the impersonator in the earlier call and apologized.

15.  She further explained that it appeared that the impersonator may have been attempting a sim-swap attack against the Plaintiff.

16.  In a sim-swap attack, an impersonator calls a cellular service and attempts to convince the cellular service to port the victim's cell phone number over to the impersonator's cell phone. Once the impersonator has the victim's cell phone number ported over, the impersonator is able to seize control of the victim's other electronic accounts, such as email and bank accounts, by attempting to log in, claiming that he has forgotten the victim's passwords to those accounts, and having the service text a two-factor identification number to the victim's cell phone so that the impersonator can then reset the victim's passwords on those accounts. *Ross v. ATT Mobility, LLC*, Case No. 19-CV-06669-JST, 2020 WL 9848766, *1 (N.D. Cal, May 14, 2020).

17.  T-Mobile's manager represented to Plaintiff Miller that T-Mobile would put a "port block" on his account so that, if the hacker called again, T-Mobile would not port over Plaintiff's cell phone number to the hacker's telephone.

18.  Plaintiff Miller then requested that, as an additional security measure to the "port block", T-Mobile flag his account so that, if someone called in to T-Mobile and attempted to make changes to his account, that T-Mobile would then end the

telephone call and call Mr. Miller back on his cell phone number to confirm his identity before changing transferring his cell phone number to a new phone.

19.     T-Mobile's representative indicated that T-Mobile would comply with his request.

20.     On or about April 16, 2021, Plaintiff Miller discovered that his mobile phone had lost its connection with T-Mobile.

21.     Using a different telephone, Plaintiff Miller contacted T-Mobile. T-Mobile informed Plaintiff that one of its employees had ported Plaintiff's telephone number over to the identity thief's cell phone despite its prior promises and representations.

22.     During the unauthorized porting over (or "sim swap"), a T-Mobile representative accessed Miller's T-Mobile services account without authorization and was able to view and access Miller's customer proprietary network information ("CPNI"), within the meaning of U.S.C. 222(h)(1)[1], which includes information about the configuration, type and use of his subscribed T-Mobile services, as well as his personal information, his sim card details, and his billing information.

---

[1] 47 U.S.C. 222(h)(1) defines "customer proprietary network information" as "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of telecommunication service by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship. . . ."

23. On information and belief, T-Mobile's representative also disclosed his CPNI information, including his account number and other billing information, to the hacker.

24. T-Mobile then transferred control over Miller's mobile phone number from Miller's phone to a phone controlled by the hacker by performing an unauthorized sim swap.

25  The imposter then used his control over Miller's mobile phone number to access his personal and financial accounts, including his email and his bank account.

26. Subsequently, Plaintiff discovered that he had lost access to his email account, bank account, and other private personal accounts during the time that T-Mobile had ported his cell phone number over to the identity thief.

27. As a result Plaintiff was forced to spend considerable time and effort notifying the holders of his various electronic accounts of the hack, securing those accounts from further damage, and seeking reimbursement for funds that the impersonator had transferred from Plaintiff's account.

28. Plaintiff lost time and money attempting to repair the damage resulting from Defendant's conduct. This includes money spent to purchase a new cellular phone and to open a new account.

29. In addition, Plaintiff and his family suffered fear, stress, and anxiety as a result of the disclosure of his personal information, including his home address and the names and ages of his children, the school that his children attended, and the names of their teachers, to the hacker. Plaintiffs' children were kept home from school for a week out of fear for their safety.

30. At all times pertinent to the allegations of this Complaint, Defendants acted by and through their duly authorized agents, employers, servants, attorneys, or other legal representatives, all of whom acted within the line and scope of such agency, employment, service, or representative capacity. Alternatively, the defendants adopted, affirmed, and /or ratified the acts or omissions of their agents, servants, employees, attorneys, or legal representatives as its own with regard to the allegations of this complaint.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FEDERAL COMMUNICATIONS ACT, 47 U.S.C. § 201 *et seq.*

31. The Defendant is a common carrier engaged in interstate communication by wire for the purpose of furnishing communication services within the meaning of Section 201(a) of the Federal Communications Act ("FCA").

32. Additionally, Plaintiff is a "telecommunications carrier" within the meaning of Section 222, which requires every telecommunication carrier to protect,

among other things, the confidentiality and proprietary information of and relating to customers.

33. Defendant's conduct as alleged herein constitutes a knowing violation of 47 U.S.C. §222(a) and (c). Defendant failed to protect and improperly permitted access to Plaintiff's CPNI when its employees accessed his account and swapped his SIM card without authorization. On information and belief, Defendant also failed to protect and disclosed, without Plaintiff's approval, Plaintiff's CPNI to a third party for reasons other emergency services.

34. As a direct consequence of Defendant's violations of the FCA, Mr. Miller has suffered injury to his person, property, health, and/or reputation as a consequence of T-Mobile's violations. In addition to his out-of-pocket losses, Mr. Miller has suffered mental anguish, embarrassment, stress, and suffering as a result of T-Mobile's practices.

35. Defendant is liable to Plaintiff pursuant to 47 U.S.C. § 206. Mr. Miller seeks the full amount of his damages sustained as a consequence of T-Mobile's violations of the FCA, together with a reasonable attorney's fee to be fixed by the Court as part of the costs in this matter.

## COUNT II

## NEGLIGENCE

36. Defendant owed Plaintiff a duty of care in the handling of his account and his personal information.

37. Defendant breached that duty when it switched his cellular telephone number over to a telephone controlled by an identity thief.

38. Defendant's breach of its duty of care proximately caused Plaintiff's damages, including his out-of-pocket losses and expenditures.

## COUNT III

## WANTONNESS

39. Defendant consciously transferred control of Plaintiff's cellular telephone number to a cell phone owned by an imposter. In the alternative, Defendant consciously failed to apply the "port block" on Plaintiff's cellular telephone number despite its promise to do so the day before.

40. At the time Defendant and/or its employees transferred control of Plaintiff's cellular number over to the imposter, Defendant was aware that injury was the likely or probable result of its actions. Defendant acted with reckless indifference to the consequences of its act or omission.

41. Plaintiff was damaged as a result.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against T-Mobile awarding the following relief:

    A.     Actual, compensatory, and consequential damages, including mental anguish damages, in such an amount as the trier of fact determines;

B.    Punitive damages in such amount as the trier of fact determines;

C.    Such interest as allowed by law;

D.    The costs of this suit, including Plaintiff's reasonable attorneys' fees; and,

E.    Such additional relief as the Court deems just and equitable.

Respectfully submitted,

/s/ *Matt Carroll*

One of the attorneys for the Plaintiff

OF COUNSEL:

Matt Carroll
JOHNSTONE CARROLL LLC
2204 Lakeshore Drive, Suite 303
Homewood, AL 35209
Phone (205) 383-1809
Fax (888) 759-3882

## JURY DEMAND

Plaintiff demands trial by jury for all claims so triable.

/s/ *Matt Carroll*

Attorney for the Plaintiff